UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | : CASE NUMBER 3:19CR0194 (MPS) |
| vs. | : |
| JOSHUA BESAW | : FEBRUARY 1, 2021 |

### DEFENDANT'S SENTENCING MEMORANDUM

On March 13, 2020 the defendant, Joshua Besaw, entered a guilty plea to the charge of Kidnapping, in violation of Title 18, United States Code, §1201(a)(1) and (g). The sentencing guidelines for this offense establishes a Base Offense level of 32 pursuant to U.S.S.G. §2A4.1(a). Six-levels are added to the base offense as a result of the victim being sexually exploited. See U.S.S.G. §2A4.1(b)(5). An additional two-levels are applied to the guidelines because the defendant knew or should have known that the victim of the offense was a vulnerable victim. See U.S.S.G. §3A1.1(b). This results in an Adjusted Offense Level of 40. After three-levels are subtracted for his prompt acknowledgement and affirmative acceptance of responsibility, Mr. Besaw's total offense level is lowered to 37. His criminal history has been calculated to be a category I. Based upon the foregoing guideline calculations, the defendant's sentencing range is 210-262 months. However, the statutorily authorized minimum sentence for this offense is 20 years. Accordingly, Mr. Besaw's guideline range is calculated as 240-262 months imprisonment. The parties have agreed in their plea agreement that a sentence within the range is reasonable and neither side will seek an upward or downward departure.

In this memorandum Mr. Besaw will address the §3553 factors, including his history and character, his minor criminal history relative to his long drug history, and favorable employment record, to urge the Court to impose the mandatory minimum sentence of twenty

1

years, which is "sufficient, but not greater than necessary" to accomplish the goals of sentencing which is to provide fair and just punishment for the offense. 18 U.S.C. §3553(a).

## III. SENTENCING ARGUMENTS

On May 31, 2019, Joshua Besaw made the worst decision of his life when he decided to lure a young female into his car and commit this crime. Little did he know that as a result of his sordid actions he'd be spending the better part of the next two decades behind prison walls. But more importantly, there is also a young victim who was forced to experience this unexplainable behavior, and likely will endure the horrible memory of that day for the rest of her life. By no means does the undersigned counsel suggest in this memorandum that Joshua should not be punished for his actions. The crime he committed is a very serious offense, and a significant sentence is certainly warranted. However, if the Court considers Josh's relative minor criminal history, his strong employment record, and the fact that he was actively ingesting large quantities of a dangerous drug in the days and months leading up to this offense, then a twenty year sentence sends a strong and powerful message that committing this type of criminal behavior will not be tolerated by society, and that severe consequences will result. Counsel hopes that the sentencing arguments advanced in this memorandum will establish that a 20-year sentence would be "sufficient, but not greater than necessary" to comply with the purposes of sentencing, as set forth in 3553(a).

## I. SENTENCING ARGUMENTS & RECOMMENDATION

### A. History & Character

In fashioning an "individualized" and just sentence, 18 U.S.C. 3553(a) directs the Court to consider the history and characteristics of the defendant. Joshua Besaw, age 37, was raised

in an intact family framework, where both of his parents worked to provide for their two children. According to Josh, his parents were supportive but emotionally distant. While he was growing up, he felt like "[he] could do whatever [he] wanted" and that his parents "were there but didn't really pay attention" to him or his brother. He considers the home and neighborhood he grew up in as middle-class. Josh describes his childhood as pretty normal, spending most of his time with his older brother's friends, fishing, riding bikes, and doing drugs. Josh indicates that his brother, Gary, introduced him to illicit substances at an early age and he started smoking marijuana on a daily basis when he was 12-years old. In elementary school, as he started to advance in grades, he began to struggle in class. He reports repeating first and fourth grade, causing him to be older than his classmates. He disliked school and did not care about his studies. Josh indicated that he received many detentions and was also suspended numerous times. There were also truancy issues. He readily admits that he started making poor choices with the friends he chose to associate with. By the time he entered high school, Josh was already sixteen years old, and the majority of his friends were close to graduating. Since he didn't like school, Josh felt he wasn't deriving any benefit by remaining in school, so he dropped out in the tenth grade.[1]

After leaving school, Josh lived home for a while with his family and supported himself with menial-type employment, such as working in restaurants and painting. He also continued doing drugs and socializing with his friends, which led to a few minor arrests in his early twenties. Around this time frame, Josh met a woman, who was significantly older than he was, and they started a long-term relationship that lasted close to seventeen years. He continued to

---

[1] He attempted to obtain his GED certificate, but was not able to complete the courses.

live with his family until a domestic incident with his brother caused him to get arrested, and a restraining order was issued by the court. The "no contact" order forced Josh to move out and seek his own apartment. He attended court ordered Anger Management classes, but found it difficult to engage in group therapy because he became anxious in social settings. Upon learning this, the program counselor referred him to a mental health clinic where he subsequently was diagnosed with severe anxiety. A nurse practitioner later prescribed him Xanax and Paxil to manage the disorder.

With limited income to support himself and his girlfriend, who had moved in with him, Josh decided to find employment that would generate higher wages. His interest in trucks led him to the New England Tractor Trailer School (NETTS) where he obtained his commercial driving license 2009. Suddenly, new doors opened, and several well-paying trucking jobs soon followed. From 2009 until shortly before his arrest in this case, Josh worked steadily for almost six years as an over the road truck driver for several different carriers, often logging in more than 70+ hours per week. During this period, he routinely earned annual wages of $50,000 or more.

Although Josh was in a comfortable place financially, he continued to struggle with substance abuse. In 2007 he was in a motor vehicle accident and prescribed pain meds for the injuries. Remnants of the injuries lingered so the pain pills continued to be prescribed, and Josh quickly found himself addicted to opioids. Living with girlfriend, she picked up the habit, too. Once the prescription stopped, Josh started to buy 30 mg. Percocets on the street. However, as Josh's tolerance grew and his addiction intensified, he began to use more pills, until he was ingesting multiple pills per day. During this period of drug use, Josh reports overdosing on several occasions, but each time his girlfriend was successful in reviving him

with a narcan injection. Even though Josh worked and earned respectable wages, he had difficulty keeping up with the cost of the pills, so he and his girlfriend decided to switch to heroin as a cheaper alternative. But as fentanyl became more readily available and identified as being cheaper and more powerful than heroin, Josh switched to this dangerous opiod in 2017.

Counsel believes the defendant's lengthy drug history contributed, in part, to his conduct in this case. With his inhibition being altered by drugs, he didn't have the full mental capacity to recognize his illegal actions. Notwithstanding his reprehensible behavior in this matter, counsel is asking the Court to also consider Josh's lack of serious criminal history, his respectable work history as a trucker, and the fact that he's never served a previous prison sentence. Counsel believes a 20-year sentence would have not only a significant deterrent effect on this defendant, it also would send a powerful message to the community. Maybe the biggest punishment he will receive here is the shame he has brought upon himself and the fact that forever he will be labeled a convicted "sex offender".

## B. <u>Nature and Circumstances of the Offense</u>

The Presentence Report sets forth a detailed account of the offense conduct, and although Joshua Besaw's memory of the events may differ slightly from those recounted by the victim, he does not dispute any of the facts that support the essential elements of the crime. PSR at ¶¶5-23.

## C. <u>Explanation of Letters Sent to Friends</u>

In the PSR there's a reference to 2-intercepted letters that Josh wrote to friends from Wyatt, which minimize his conduct. Id. at ¶32. It appears that Josh wrote these letters several

months after his arrest, when his understanding of the aberrant behavior he exhibited had not yet been fully realized. But since then, Josh has come to accept that his conduct was egregious, and he's expressed remorse over his actions. In his letter to the Court, the defendant tries to explain the reasons for why he wrote the above referenced letters to his friends. See **Exhibit A**.

> "I was embarrassed of my actions and was in denial when I wrote letters to my friends when I minimized the trauma that I inflicted upon the victim."

In the letter he also finally acknowledges the harm his conduct has caused the victim.

> "...I just want the victim and her family to know how deeply sorry I am for the pain I have caused them. It has taken me awhile to see how bad my conduct was and to understand that I need to be punished for my behavior. What I did was very serious and harmful to the victim. While I have been incarcerated, it has allowed me to come to an understanding, through personal reflection and thought, for how damaging my behavior was to the victim and the harm that I have caused her. Now due to my actions, the victim must relive the trauma everyday. I did not comprehend the trauma that the victim goes through. I am in disgust knowing the everyday struggles that I have caused to the victim."

Unfortunately, one cannot turn back the hands of time. Joshua Besaw understands the Court will impose a harsh punishment as a result of his criminal conduct, and while serving this sentence he promises to work hard to become a better person and try to correct his wrongful ways.

Josh's father, Gary Besaw, has also written a note to the Court concerning his son's impending sentence. **Exhibit C**. Visiting Josh in jail, Gary sees the tears in his son's eyes and believes he is "truly sorry for what he did".

6

### D. Psychological Evaluation

During the pendency of the case, Josh had a psychological evaluation performed by Dr. Baranoski of Yale Department of Psychiatry. The evaluation was conducted over two separate days; November 16, 2019 for 3 ½ hours, and December 7, 2019 for 3 ½ hours. Various psychological tests were administered to evaluate Josh's cognitive ability, personality, and if there were any other psychiatric difficulties that could account for his behavior in this case.

The defendant's personality testing established a mixed personality disorder profile marked by avoidant, dependent, and antisocial traits with patterns of passive aggressive behavior. See **Exhibit B (Under Seal)**. According to Dr. Baranoski, Josh's dependent traits include emotional immaturity, and his antisocial characteristics of blaming others and limited empathy appear to merge with his emotional immaturity. He is a 37-year old man who reflects the emotional and social function of an adolescent. The psychologist further opines that Josh's drug addiction has further arrested his maturation and has limited his goals and aspirations.

Although Dr. Baranoski was unable to evaluate Josh's potential to engage in future sexual deviance due to his defensiveness toward discussing his sexual interests, there is nothing in his history, aside from the instant offense, to suggest that he possesses sexually deviant traits. As an adult, Josh has been in two long-term, heterosexual relationships with older women. There are no other reported cases to suggest that Josh demonstrates a proclivity towards minor children. Moreover, following his arrest, the police seized his cellphone, and counsel has not been made aware of any child pornography images beings stored there or website searches being performed on the device.

On the positive side, Dr. Baranoski has identified some of Josh's strengths that can support his rehabilitation and reduce the risk of recidivism. These favorable traits include the following;

-He has the intelligence and cognitive capacity to benefit from therapy and substance treatment programs;
-He does not possess a primary antisocial personality and is not deemed psychopathic;
-He has a sustained employment history and further has demonstrated the ability to learn skills by obtaining his CDL license;
-His dependency characteristics will support his work in therapy

In summary, counsel submits that Joshua Besaw is not a lost cause, and further believes he possesses the ability to make positive changes in his life that will certainly benefit him in the future, once his is released into the community. He is very receptive to treatment to help identify the trigger(s) that might have caused his unexplainable behavior in this matter. Josh also looks forward to returning to the trucking industry upon his release from prison, where he found great joy in the solitude of the road.

## II. CONCLUSION

Joshua Besaw is still a relatively young man who has lived a hard life controlled by drug addiction and anxiety. Despite these obstacles, he was able to find gainful employment and provide for himself. And over the past 18-months of confinement, Josh has remained free of accruing any disciplinary tickets. The offense here is obviously serious, but counsel believes Josh can be rehabilitated with proper mental health and substance abuse treatment. Accordingly, he asks the Court to recommend the RDAP program and any other mental health programs to assist with his rehabilitation.

As cited above, a fundamental principle of sentencing is that a court "shall impose a sentence sufficient, but not greater than necessary" to meet specified sentencing goals, including the goal of "just punishment." *See* 18 U.S.C. §3553(a). This defendant has accepted responsibility for his conduct, and further understands the significant consequences that flow from it. Ever mindful of the hardship that the victim has had to endure, and may endure in the future, counsel respectfully submits that a sentence at the low end of the guideline range, or twenty-years of incarceration, is more than sufficient to reflect the seriousness of the offense, promote respect for the law, protect the public, provide just punishment, and deter this man in the future from committing similar offenses or any other types of crimes.

Respectfully submitted,
The Defendant – Joshua Besaw

/s/ *William H. Paetzold*
William H. Paetzold
Moriarty, Paetzold & Sherwood
2230 Main Street
Glastonbury, CT  06033
Tel. (860) 657-1010
Federal Bar No.: ct10074

## CERTIFICATION

This is to certify that the foregoing was filed electronically on February 2, 2021 to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

/s/ *William H. Paetzold*
William H. Paetzold

# EXHIBIT A

Letter to the Court from Joshua Besaw

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

STATEMENT OF JOSHUA ANTHONY BESAW

Dear Judge Shea,

    I would like to say that I am remorsefully sorry, for my own egregious behavior, and I just want to let the victim and her family know how deeply sorry I am for the pain I have caused them. It has taken me awhile to see how bad my conduct was and to understand that I need to be punished for my behavior. What I did was very serious and harmful to the victim. While I have been incarcerated, it has allowed me to come to an understanding, through personal reflection and thought, of how damaging my behavior was to the victim and the harm that I have caused her. Now due to my actions, the victim must relive her trauma everyday. I did not comprehend the trauma that the victim goes through. I am in disgust knowing the everyday struggles that I have caused to the victim. I was embarrassed of my actions and was in denial when I wrote letters to my friends when I minimized the trauma that I inflicted upon the victim. I am now laser-focused in recognizing my mistakes that I have made and I will do everything I can to make my life more productive to the best opportunity I can for myself, as well as my family to be a much better person. Because we all have to learn from our mistakes to do the best I can. I made my choice to accept this plea offer and to take responsibility. I have no one to blame but me and I plan to work hard in prison to make sure that this will never happen again. I can still find time to better myself through rehabilitation programs that will come available to me, so I can look forward to a bright future. This time in prison will not be wasted. My actions in this case show that I need counseling and I will use the time to better myself. Thank you Your Honor for allowing me to address this Honorable Court. I would also like to thank my family for being there for me in a most difficult time in my life. Again, I am sorry for my actions, and I will be a better person.

Respectfully Submitted,

*Joshua Besaw*
Joshua Besaw #26437-014

# EXHIBIT B

Psychological Evaluation

(Under Seal)

# EXHIBIT C

Letter from Gary Besaw (father)

To the Judge Residing in my sons case

My son Joshua Anthony Pesaw is a good man, I know he made a big misstake. And everytime me and my wife have gone to see him he his tears in his eyes. I know he was doing drugs in the past leading up to this event. I know he is truely sorry for what he did, he does deserves to be punished for what he did. But I don't think he shwuld be getting 20 years for this. I am 62 years old and I would like to see my son out before I die I am begging you to be light on him

Sincerly Gary F. Pesaw
Gary F Besaw